United States District Court
Southern District of Texas

**ENTERED**

May 26, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JACQUELYN M. PHILLIPS, | § |
| | § |
| Plaintiff, | § |
| VS. | § |
| | § |
| SUPER SERVICES HOLDINGS, LLC D/B/A | § |
| SUPER SERVICES LLC, *et al*, | § |
| | § |
| Defendants. | § |

CIVIL ACTION NO. 4:14-CV-00950

## OPINION AND ORDER

Pending in the above-referenced negligence action are Defendants' Motion for Partial Summary Judgment on Plaintiff's Negligent Hiring, Negligent Retention, and Negligent Entrustment Claims (Doc. 20) and Defendants' Motion for Partial Summary Judgment on Plaintiff's Gross Negligence Claim (Doc. 21). Having considered the motions, responses, replies, record, and relevant law, the Court is of the opinion that Defendants' motions should be granted for the reasons set forth below.

### I. Background

This action arises out of an automobile accident that occurred on May 4, 2014, on Interstate 10 in Columbus, Texas. (Doc. 20-1 at 114.) At the time of the collision, Defendant Sharlena Harris ("Harris") was driving westbound in the middle lane in a tractor-trailer owned by Defendant Super Service Holdings, LLC ("Super Service"). (Doc. 3 at ¶ 9.) Plaintiff Jacquelyn Phillips ("Phillips") was also driving west but in the far left lane. (Doc. 20-2 at 3.) As Phillips was traveling next to Harris, a third vehicle, failing to control its speed, approached Phillips from the rear and hit her. (*Id.*) As a result of the impact, Phillips's car began to skid into the middle lane where she was struck by Harris. (*Id.*) The force of this second impact caused Phillips's

1 / 28

vehicle to turn clockwise across the roadway and veer down an embankment on the north side of the freeway, where it struck a barbed-wire fence. (*Id.*) According to Phillips, she and her minor child both suffered multiple injuries as a result of the accident. (Doc. 3 at ¶ 10.) There is no indication that Harris was under the influence of any alcohol, illegal substance, or medication that impaired her ability to drive when the collision occurred. (*See* Doc. 20-2 at 3–5.)

At the time of the accident, Harris had been employed by Super Service for over a year and a half. (*See* Doc. 20-1 at 13.) She submitted her original employment application to Super Service on September, 26, 2012. (*Id.* at 10–13, 82–87.) With her application, she submitted proof of a valid and current Mississippi commercial driver's license ("CDL"). (*Id.* at 4.) Her application also listed Little Richard Trucking in Canton, Mississippi as her former employer, stated that she had most commonly operated a conventional tractor with a flatbed trailer of 53 feet or more for the company, and listed her dates of employment as August 2011 to September 2012. (*Id.* at 11–12, 84–85.) Under the traffic convictions/violations section of the application, she listed only one violation in April 2012 for no proof of insurance.[1] (*Id.* at 11–12, 83.)

After receiving her application, Super Service used a third-party service to run driving- and criminal-background checks on Harris. (*Id.* at 14, 16, 34, 36–37.) The jurisdictions searched pursuant to these checks included all fifty states as well as various state, national, and international databases. (*Id.* at 14.) The results confirmed that Harris had a valid CDL, no accident history, and a "clear" motor vehicle report ("MVR"). (*Id.* at 16, 34, 36–37.) When

---

[1] The traffic convictions/violations section of the Super Service application only asked about "moving violations or traffic convictions in the past three years." (Doc. 20-1 at 11.) Although Harris listed the date of her failure-to-maintain-insurance offense as April 2012, her only conviction for that offense in 2012 occurred in August 2012. (Doc. 22-3 at 3.) She did not list her conviction for failure to maintain required liability insurance in November 2010 or her license suspension from that conviction in September 2010, even though both offenses would have fallen within the three-year reporting period. (*Id.*; Doc. 20-1 at 11–12.)

contacted for a reference, Little Richard Trucking reported that she had no negative employment history and the company would rehire her. (*Id.* at 22.)

As the next step in the employment process, Super Service required Harris to undergo a pre-employment medical examination, including drug testing, pursuant to the Federal Motor Carrier Safety Administration ("FMCSA") regulations. (*Id.* at 2–3, 5–9, 40–43.) Her drug tests came back negative and she was cleared for driving with the exception that she had to wear corrective lenses when operating a vehicle. (*Id.*) Also pursuant to the FMCSA regulations, Harris was required to take a road test, which she passed, scoring in the top tier of applicants. (*Id.* at 72–74.) Additionally, she took a HAZMAT test, a written driving test, and was provided with a number of safety guides before beginning her employment. (*Id.* at 67–71, 75–77.)

In her complaint, Phillips alleges that her injuries and those of her child were a proximate cause of Harris and Super Service's negligence and asserts claims for (1) negligence, (2) negligent hiring, (3) negligent retention, (4) negligent entrustment, (5) respondeat superior, and (6) gross negligence. (Doc. 3 at ¶¶ 12–20.) Phillips bases her claims against Super Service on the argument that Harris was an incompetent or reckless driver and that Super Service knew or should have known of this fact if it had properly investigated, screened, and supervised her. (*Id.* at ¶¶ 14–16.)

## II. Legal Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewed in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1996). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The movant initially bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 885 (1990) (citations omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. When the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact concerning every element of its cause of action in order to defeat the motion for summary judgment. *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994); *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). There is no genuine issue for trial if a rational trier could not find for the nonmoving party based on the evidence presented. *City Pub. Serv. Bd.*, 40 F.3d at 712–13 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88 (1986)).

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (internal citation and quotation marks omitted) ("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1995) (quoting *Solo Serve Corp. v. Westtown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991) (for the

party opposing the motion for summary judgment, " 'only evidence—not argument, not facts in the complaint—will satisfy' the burden."). Likewise, unsubstantiated assertions, conclusory allegations, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Instead, the nonmovant must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (quoting *Celotex*, 477 U.S. at 324) (internal quotation marks omitted).

In ruling on a summary judgment motion, the court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant, but court may not make credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### III. Analysis

Of Plaintiff's six claims, only four are the subject of Defendants' motions: negligent hiring (Count Two), negligent retention (Count Three), negligent entrustment (Count Four) and gross negligence (Count Six).

#### A.  Sua Sponte Application of Rule 201

After an extensive survey of the governing law and application of the law to the record here, the Court has determined that the Mississippi Driver License Record citations Plaintiff presented as evidence of Harris's incompetence or recklessness could be determinative to the outcome of the case, if the Court could ascertain the basis for and date of each conviction. (*See* Doc. 22-3 at 3–4.) Although both parties acknowledged the driver's record and listed the types of

citations found therein, they did not explain what citation each code corresponded to so the Court could match the year of to the reason for each conviction. As a result, the Court took judicial notice[2] of version 5.1.0 of the American Association of Motor Vehicle Administrators ("AAMVA") Code Dictionary ("ACD"),[3] which is a set of codes used nationwide to identify the types of driver convictions and reasons for driver withdrawals that appear on drivers' records. Having done so, the Court notes that the Mississippi record Plaintiff attaches to her response indicates that before the May 2013 accident that is at the heart of this case,[4] Harris was convicted

---

[2] Fed. R. Evid. 201(b)(2) provides that a court may take judicial notice of a "fact . . . not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned." Universal codes fall within the ambit of Rule 201. *See, e.g.*, *In re Nunez*, 527 B.R. 410, 412 (Bankr. D. Or. 2015) (taking judicial notice of United States Department of Education's Federal School Codes Lists for particular years); *In re Huffman*, 204 B.R. 562, 564 (Bankr. W.D. Mo. 1997) (taking judicial notice of the United States government's directory of zip codes); *City of New York v. Gordon*, 12-CV-4838 (VSB), 2015 WL 9646053, at *11 (S.D.N.Y. Dec. 10, 2015) (noting that zip code lists can be the subject of judicial notice under 201); *United States v. Reid Hosp. & Health Care Servs., Inc.*, 1:10-CV-0526-JMS-TAB, 2012 WL 3949532, at *3 (S.D. Ind. Sept. 10, 2012) (taking judicial notice of the Medicare Claims Processing Manual in order to understand reporting diagnostic codes).

[3] AAMVA Code Dictionary (ACD) Manual, Release 5.1.0 (August 2013), *available at* file:///C:/Users/mh_lc3/Downloads/ACD%20Manual%20%20Release%20510.pdf.

[4] The Mississippi record also indicates that Harris was convicted of the offense of "failure to obey sign or traffic control device" in December 2014 and received a license suspension related to this conviction. (Doc. 22-3 at 4.) However, because this incident occurred after the Harris-Phillips accident, the conviction and resulting suspension are irrelevant to the question posed by this case, which is whether Harris was an incompetent or reckless driver and whether Super Service knew or should have known she was an incompetent or reckless driver when it hired her. *See, e.g.*, *Huynh v. R. Warehousing & Port Servs., Inc.*, 973 S.W.2d 375, 378 (Tex. App.—Tyler 1998, no pet.) ("The act of entrusting the vehicle necessarily takes place before the accident. Subsequent conduct . . . has no bearing on a negligent entrustment claim."); *Williams v. Steves Indus., Inc.*, 678 S.W.2d 205, 211 (Tex. App.—Austin 1984), *aff'd*, 699 S.W.2d 570 (Tex. 1985) ("Any act occurring subsequent to the accident could not be a proximate cause of the accident."); *Atkinson v. Snodgrass*, 11-05-00011-CV, 2006 WL 648334, at *3 (Tex. App.—Eastland Mar. 16, 2006, no pet.) ("[T]he act of entrusting the vehicle necessarily takes place before the accident and, therefore, subsequent events have no bearing."); *Baures v. Cano*, 13-92-386-CV, 1994 WL 115862, at *2 (Tex. App.—Corpus Christi Apr. 7, 1994, writ denied) (finding that post-collision conduct is not relevant to a driver or employer's negligence for the collision in question).

of: (1) speeding in May 2007; (2) speeding in June 2009; (3) improper use of a child or youth restraint in May 2009; (4) failure to maintain required liability insurance in November 2010; and (5) failure to maintain required liability insurance in August 2012. (Doc. 22-3 at 3.) Additionally, Harris had her license suspended in September 2010 for failure to maintain liability insurance. (*Id.* at 4.) The Court will consider these events when applying the law to the case at bar.

### B. Sufficiency of Defendants' Motion for Summary Judgment on Plaintiff's Negligent Hiring and Retention Claims

In their motion, Defendants note that "[i]n essence, the standard for determining whether Super Services negligently hired or retained Harris depends on the same standard for determining whether Super Services negligently entrusted its vehicle to Harris." (Doc. 20 at ¶ 13.) Defendants then argue that there is no genuine issue of material fact as to whether Harris was an unlicensed, incompetent, or reckless driver or that Super Service knew or should have known that Harris was an unlicensed, incompetent, or reckless driver at the time of entrustment because she (a) had a valid, current driver's license; (2) was not in an altered state or condition that impaired her ability to drive; (3) had a clear driving record; and (4) passed all of her background, medical, and driving examinations. (Doc. 20 at ¶¶ 15, 17, 19–20.) Plaintiff responds that by "mainly devot[ing its motion] to arguments regarding negligent entrustment . . . . Super Service did not articulate the basis of its motion for partial summary judgment as to the negligent hiring [and retention] claim[s]." (Doc. 22 at 5.) The Court disagrees.

Although the employer's awareness of the incompetency or fitness of the employee is not an "express element" of a negligent hiring or retention claim,[5] one way a plaintiff may

---

[5] A negligent hiring claim is a simple negligence cause of action based on an employer's direct negligence rather than on vicarious liability. *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 901–02 (Tex. App.—Fort Worth 2007), *rev'd on other grounds*, 306 S.W.3d 230 (Tex. 2010) (citations omitted). Thus, the elements, as in any negligence case, are duty, breach, and damages

demonstrate breach is "if the employer hires [or retains] an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 901–02 (Tex. App.—Fort Worth 2007), *rev'd on other grounds*, 306 S.W.3d 230 (Tex. 2010). Here, Plaintiff's negligent hiring and retention claims are premised entirely on Super Service's hiring and retaining an employee it "knew, or by the exercise of reasonable care should have known to be incompetent, unfit, or reckless, thereby creating an unreasonable risk of harm to others." (Doc. 3 at ¶¶ 14–15.) Accordingly, Defendants are correct that the standard mirrors that of Plaintiff's negligent entrustment claim.[6] Defendants' motion is not deficient and will, therefore, be considered for all stated claims.

## C. Negligent Hiring and Retention

Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability. *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 810 (Tex. App.—Austin 1997, no writ) (citations omitted). The elements of a negligence action are duty, a breach of that duty, and damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

An employer owes a duty to its other employees and the general public to ascertain the qualifications and competence of the employees it hires, especially where the occupation at issue could cause hazard to others or requires skilled or experienced persons. *Morris v. JTM Materials,*

---

proximately caused by the breach. *Id.* (citing *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990)).

[6] Elements two and three of a negligent entrustment claim require that the driver be "unlicensed, incompetent, or reckless" and that the owner entrust his vehicle to him even though it "knew or should have known" the driver was "an unlicensed, incompetent, or reckless driver." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007) (citation omitted).

*Inc.*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.) (citations omitted). "Therefore, an employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *Id.* (citations omitted). In light of these principles, and in order to promote safety and prevent motor vehicle accidents, a motor carrier has a duty to take steps to prevent injury to the driving public by determining whether an applicant to drive one of its trucks is competent and qualified. *Id.* (citations omitted).

Liability for negligent hiring, retention, or supervision is also premised on proximate cause. *Id.* at 50. Proximate cause consists of cause in fact and foreseeability. *Doe v. Boys Clubs*, 907 S.W.2d 472, 477 (Tex. 1995) (citation omitted). "The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred." *Id.* (internal citation and quotation marks omitted). Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985).

To avoid a negligent hiring or entrustment claim, employers should make a proper investigation into an employee's past. *See Parker v. Fox Vacuum, Inc.*, 732 S.W.2d 722, 723 (Tex. App.—Beaumont 1987, writ ref'd n.r.e.). If the investigation of the employee would not have turned up anything that would cause a reasonable employer not to hire him, proximate cause will be lacking and the employer will not be liable. *See, e.g.*, *McDorman ex rel. Connelly v. Texas-Cola Leasing Co.*, 288 F. Supp. 2d 796, 805 (N.D. Tex. 2003) ("Convictions for domestic violence and possession with intent to distribute, along with traffic violations unrelated

to unsafe driving, lack the nexus to the accident in question to establish liability for negligent hiring.") Nevertheless, an employer who only conducts a cursory background check that comes back "clean" may still face liability. *See Morris*, 78 S.W.3d at 51 (finding employer's failure to obtain additional reports that would have disclosed offenses relevant to employee's employment duties raised a fact issue as to whether employer exercised reasonable care in qualifying him as a driver).

Here, the parties essentially dispute whether Super Service breached its duty to Plaintiff and whether proximate cause exists. Defendants claim they are entitled to summary judgment on the negligent hiring and retention claims because Harris was not an incompetent or reckless driver. (Doc. 20 at ¶ 20.) Furthermore, even if she was, Super Service did not and could not have known because it conducted extensive testing and screening of her. (*Id.*)

Citing *Carney v. Roberts Inv. Co.*, 837 S.W.2d 206, 211 (Tex. App—Tyler 1992, writ denied), Plaintiff urges that "the fact that Super Service maintained some policies and procedures to ensure the hiring of qualified drivers does not automatically preclude recover[y] on a negligent hiring theory." (Doc. 22 at 5–6.) Plaintiff next argues that Super Service failed to properly screen and investigate Harris because her personnel file states that her CDL was issued on September 19, 2012, and she worked for her previous employer as a trucker from August 2011 until September 2012. (*Id.* at 6.) Thus, Phillips concludes, this information "suggests that Harris worked as a truck driver without a commercial driver's license for over a year," which is evidence of recklessness. (*Id.*) Finally, Phillips contends that Super Service only conducted a license check on Harris in Texas, even though her application clearly stated that she was a resident of Mississippi. (*Id.* at 7.) Had Super Service obtained a copy of Harris's Mississippi record, Phillips asserts that the company "would have discovered that Harris had received

numerous [citations] dating back to 2007 for failing to maintain insurance, failing to properly use a child or youth restraint[,] and speeding." (*Id.*) According to Phillips, the fact that Super Service did not unearth these citations is evidence that the company failed to properly screen and investigate Harris prior to hiring her and "[t]hese failures would permit a jury to find that Super Service hired an employee about whom it had insufficient knowledge to make a proper determination regarding her fitness to operate a commercial vehicle." (*Id.*)

In their reply, Defendants initially note that Phillips incorrectly cites the standard for negligent hiring.[7] (Doc. 24 at ¶¶ 2–3.) Nevertheless, Defendants contend that under either standard they have met their burden because Super Service did investigate, screen, and supervise Harris before hiring her as a driver. (*Id.* at ¶ 4.) Defendants claim that a Mississippi driver's check was in fact performed on Harris and the reference to Texas was simply a mistake. (*Id.* at ¶ 6.) Pointing to the record, Defendants note that this Mississippi check came back clear and the CDL Harris was issued on September 19, 2012, was a duplicate license—refuting Phillips's claim that Harris was unlicensed prior to that date. (*Id.* at ¶¶ 6–8.)

While Phillips is correct to note that compliance with internal procedures to ensure the

---

[7] According to Defendants, Plaintiff misstates the standard for negligent hiring because her response states that a negligent hiring claim requires that the employer fail to "investigate, screen, or supervise" its hires, but her complaint alleges Super Service negligently hired Harris because she "was an incompetent, unfit[,] or reckless employee-driver whom Defendant knew, or by the exercise of reasonable care should have known, to be incompetent, unfit[,] or reckless, thereby creating an unreasonable risk of harm to others." (Doc. 24 at ¶ 2.) (internal citation and quotation marks omitted). The Court does not understand Defendants' purpose in making this argument. These "standards" are essentially synonymous. As stated above, to prevail on a claim for negligent hiring, retention, or supervision, a plaintiff need only show duty, breach, and damages proximately caused by the employer's breach. These elements may be satisfied in a number of ways. Plaintiff's theory of liability in this case rests on the argument that Super Service had a duty to properly screen its drivers, which it breached when it performed an inadequate background and driving check of Harris that failed to turn up her Mississippi records or alert the company that she may have been driving trucks without a CDL for a year. Both "standards" that Plaintiff asserts would be satisfied by evidence supporting this theory.

hiring of qualified drivers will not always absolve an employer of liability, Plaintiff's characterization of *Carney* sweeps too broadly. In *Carney*, a truck driver who had been fired from his previous job for having too many accidents struck and killed plaintiff's husband a mere two months after being hired by the defendant trucking company. 837 S.W.2d at 207–08, 211. After a jury finding that the trucking company was not negligent in causing the accident, the plaintiff appealed, arguing that the evidence was insufficient to support the jury's finding. *Id.* at 210. The Tyler Court of Appeals sustained the plaintiff-appellant's point of error, noting that the brakes on the trailer did not work properly and the truck driver had poor eyesight and an accident-filled driving record. *Id.* at 211. In doing so, the court admitted that there was "some evidence that [the defendant] had oral policies and procedures designed to insure that the trailers owned by the company were properly inspected and maintained and that competent truck drivers were hired." *Id.* However, because there was no written policy or procedure concerning inspecting the trailer, investigating the driver's driving record, or examining the driver's physical health, and none of the foregoing occurred in spite of the existence of the oral policies, the court concluded that the jury's finding was against the great weight and preponderance of the evidence. *Id.*

In fact, the *Carney* opinion is premised on far more than the existence of and compliance with internal hiring policies, whether such policies were formalized and followed, and what complying with them would have revealed also factored into the court's holding. In reality, at the heart of the *Carney* decision lies the standard proximate cause analysis, which focuses on the nexus between the accident and the missed information. The *Carney* driver's poor eyesight and driving record were missed pieces of information directly relevant to the risk posed by the company's decision to hire him, pieces of information that would have likely caused a

reasonable employer not to extend an offer of employment.

Thus, the key to liability under Texas law is the relevance of the missed or ignored information to the risk posed by the employee's position and whether it would cause a reasonable employer to think twice about hiring the employee. As the Northern District of Texas stated, "[i]f prior convictions d[o] 'not indicate criminal conduct in any way akin' to the harm that befalls a plaintiff, then 'no reasonable mind could anticipate the result.' " *McDorman*, 288 F. Supp. 2d at 804 (quoting *Doe*, 907 S.W.2d at 478.) Just as Harris had convictions that did not appear in the third-party checks Super Service authorized, the defendant company in *McDorman* conducted both driving-record and criminal-background checks through a third-party service that came back "clear,"even though the driver actually had two criminal convictions and three traffic violations unrelated to unsafe driving.[8] *Id.* at 800. Nevertheless, believing the accuracy of the third-party reports, the company hired him. *Id.* When the driver was later involved in an injury accident while driving for the company, the plaintiff brought suit alleging negligent hiring on the basis of his undiscovered record. *Id.* at 801–02. The court concluded that the company could not be liable because it was not foreseeable that someone with the driver's record would be involved in such an accident. *Id.* at 805–06. Granting Defendants' motion for summary judgment, the court stated that "even if Defendants were aware or should have been aware of Mr. Upshaw's prior convictions and traffic violations," such convictions "lack the nexus to the accident in question to establish liability for negligent hiring." *Id.*

Establishing the required nexus is difficult in Texas. To demonstrate a fact issue as to whether an employer exercised reasonable care in qualifying a driver based on his record, Texas

---

[8] The criminal convictions were for domestic violence and possession with intent to distribute, and the traffic violations were a license suspension for failure to pay child support, a citation for driving with a suspended license, and a seat belt violation.

courts appear to require that the record contain recent and/or frequent violations that are violations related to the accident at issue. *See Morris*, 78 S.W.3d at 51–52 (one DUI conviction 16 years prior the accident, one conviction for drug possession 12 years prior, one DUI charge two years prior, and one non-injury accident the same year sufficient to raise fact issue in case in which the driver was intoxicated when the accident occurred).

Initially, the Court notes that the summary judgment record indicates that, contrary to Phillips's assertion, the MVR performed on Harris did in fact cover Mississippi, and still came back "clear." (Doc. 20-1 at 14, 36–37.) The record also indicates that the license issued to Harris on September 19, 2012 was a duplicate. (Doc. 23-3 at 1.) Accordingly, like *McDorman*, this is a case of missed rather than ignored information. The question then is whether the missed convictions have the requisite nexus to the accident in question. As noted earlier, a review of the ACD codes in Harris's Mississippi driver's record reveal that she was convicted of: (1) speeding in May 2007; (2) speeding in June 2009; (3) improper use of a child or youth restraint in May 2009; (4) failure to maintain required liability insurance in November 2010; and (5) failure to maintain required liability insurance in August 2012. (Doc. 22-3 at 3.) Additionally, Harris had her license suspended in September 2010 for failure to maintain liability insurance. (*Id.* at 4.)

Taking guidance from *McDorman*, the Court concludes that Harris's non-speeding convictions[9] lack the relevant nexus to the Phillips-Harris accident to impose liability on the company. This conclusion is further buttressed by the discussion of driving record convictions as evidence of recklessness or incompetence in the negligent-entrustment analysis below. However, because traffic violations may establish incompetence or recklessness and the analysis of a

---

[9]  Those convictions are: (1) improper use of a child or youth restraint in May 2009; (2) failure to maintain required liability insurance in November 2010; (3) license suspension in September 2010 for failure to maintain liability insurance; and (4) failure to maintain required liability insurance in August 2012. (Doc. 22-3 at 3.)

negligent hiring claim premised on these characteristics mirrors that of a negligent entrustment claim, *see Mireles v. Ashley*, 201 S.W.3d 779, 783 n.4 (Tex. App.—Amarillo 2006, no pet.), the Court will address Harris's speeding tickets in depth below.

### D. Negligent Entrustment

In a negligent entrustment action, the plaintiff must show: (1) the defendant entrusted the vehicle to the driver; (2) that person was an unlicensed, incompetent, or reckless driver; (3) at the time of the entrustment, the defendant knew or should have known that the driver was an unlicensed, incompetent, or reckless driver; (4) the driver was negligent on the occasion in question; and (5) the driver's negligence proximately caused the accident. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007) (citation omitted). Knowledge of the driver's incompetency at the time of the entrustment is an essential element to establish negligence. *McDorman*, 288 F. Supp. 2d at 806. In order to sustain a negligent entrustment claim based on a failure to screen, "a plaintiff must show that that anything found in a background check 'would cause a reasonable employer to not hire' the employee, or would be sufficient to put the employer 'on notice that hiring [the employee] would create a risk of harm to the public.' " *Magee v. G & H Towing Co.*, 388 S.W.3d 711, 717 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (quoting *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d at 788, 796–97 (Tex. 2006)). "The plaintiff must also prove that the risk that caused the entrustment or hiring to be negligent caused the accident at issue." *Id.* at 717 (citing *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 597 (Tex. 1987)).

In this case, the parties dispute whether Plaintiff has met her burden on the second and third elements of her negligent entrustment claim. The parties do not dispute that Harris was a licensed driver at the time of the accident. (Docs. 20 at ¶ 15; 22 at 8.) Because possession of a

valid, unrestricted driver's license is evidence of a driver's competency absent any evidence to the contrary, *Batte v. Hendricks*, 137 S.W.3d 790, 791 (Tex. App.—Dallas 2004, pet. denied), the parties instead focus on whether Harris was incompetent or reckless and whether Super Service knew or should have known she was incompetent or reckless. (Docs. 20 at ¶¶ 16–20; 22 at 8–11.)

As with the negligent hiring and retention claims, Defendants argue that they are entitled to summary judgment because Super Service conducted background and driving-record checks on Harris that came back clear; subjected her to medical and driving tests, which she passed; and confirmed that she was not in an altered state or condition that impaired her ability to drive. (Doc. 20 at ¶ 20.) Phillips responds with the same arguments wielded against the motion for summary judgment on her negligent hiring and retention claims: that Super Service was negligent in entrusting Harris with a vehicle after her background check indicated (or should have) that she was reckless and incompetent because (1) she was employed as truck driver for a year prior to the issuance of her CDL, and (2) had various traffic violations dating back to 2007 in Mississippi that Super Service did not discover. (Doc. 22 at 9–11.) Citing the FMCSA regulations and a number of cases, Super Service replies that it was only required to conduct a three-year driving record check and that even had it known of the missed citations, such citations are insufficient to demonstrate that Harris was incompetent or reckless. (Doc. 24 at ¶¶ 12–13.)

As in negligent hiring cases, in order for a prior conviction[10] to be relevant, the offense(s)

---

[10] Citations alone are insufficient to establish that a driver is incompetent or reckless. *Houston Cab Co. v. Fields*, 249 S.W.3d 741, 746 (Tex. App.—Beaumont 2008, no pet.) (citing *Hines v. Nelson*, 547 S.W.2d 378, 386 (Tex. Civ. App.—Tyler 1977, no writ) for the proposition that "a driving record containing listed violations or accidents in which no indication of guilt or fault is indicated is insufficient to show that the individual concerned was a habitually reckless and incompetent driver").

must be related to the risk posed by the employee. *McDorman*, 288 F. Supp. 2d at 805–06. In negligent entrustment cases, this means that there must be a "nexus" between the prior offenses and the safety of other drivers on the roadways. *Id.* Accordingly, where there is no evidence that a driver's past driving performance was such that a prudent person, considering the safety of others on the highways, would deny the driver access to an automobile, then the evidence is insufficient to establish incompetency or recklessness. *Louis Thames Chevrolet Co. v. Hathaway*, 712 S.W.2d 602, 604 (Tex. App.—Houston [1st Dist.] 1986, no writ).

Under this standard, Texas courts routinely find that convictions and suspensions for failure to maintain liability insurance are insufficient to show recklessness or incompetence. *Houston Cab Co. v. Fields*, 249 S.W.3d 741, 746 (Tex. App.—Beaumont 2008, no pet.) (two convictions and one suspension for failure to maintain liability insurance not indicative of recklessness or incompetence). Likewise, convictions or license suspensions for seat belt violations and other reasons unrelated to driving are insufficient. *McDorman*, 288 F. Supp. 2d at 800, 810 n.3 (license suspension for failure to pay child support, citation for driving on suspended license, and citation for seat belt violation not indicative of recklessness or incompetence); *Nobbie v. Agency Rent-A-Car, Inc.*, 763 S.W.2d 590, 593 (1988) (one defective headlamp citation, one speeding ticket that would not have shown up on record because of the age of the ticket, and two suspensions for judgment eight years prior to accident insufficient to show recklessness or incompetence).

The courts also consider the number and remoteness of the violations in assessing whether the record is sufficient to establish recklessness or incompetence. Proof of one ticket— even if recent—is "grossly inadequate" to make this showing. *Broesche v. Bullock*, 427 S.W.2d

89, 93 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.) (citing *Mayer v. Johnson*, 148 S.W.2d 454 (Tex. Civ. App.—Amarillo 1941, writ dism'd)). *See also Louis Thames Chevrolet*, 712 S.W.2d at 604. A record with two moving violations or accidents within a two-year period prior to the accident is also insufficient. *Broesche*, 427 S.W.2d at 93 (citation omitted). Even serious tickets such as DUIs are not indicative of a driver's recklessness or incompetence if they are remote. *Batte*, 137 S.W.3d at 791 (16-year old DUI too remote to create fact issue on recklessness or incompetence); *Avalos v. Brown Auto. Ctr., Inc.*, 63 S.W.3d 42, 49 (Tex. App.—San Antonio 2001, no pet.) (seven-year old DUI too remote to create fact issue on recklessness or incompetence); *Beall v. Cooke*, 01-00-00150-CV, 2001 WL 699915, at \*4 (Tex. App.—Houston [1st Dist.] June 21, 2001, no pet.) (five-year old DUI too remote to create fact issue on recklessness or incompetence). Remarkably, the courts have also found the evidence insufficient when one relevant ticket is remote and the driver was cited for another moving traffic violation during the employment at issue, but before the accident. *Goodyear Tire*, 236 S.W.3d at 758 (one ticket for driving without liability insurance, and one ticket for collision appearing on three-year driving record obtained for employment purposes, plus one speeding ticket while employed insufficient to create fact issue on recklessness or incompetence).

As these cases demonstrate, the Texas courts have set the bar high. Indeed, when courts do find that the evidence is sufficient to establish recklessness or incompetence, the record contains convictions and violations that are related to the accident, frequent, and recent. *Broesche*, 427 S.W.2d at 93 (seven citations for moving traffic violations, one warning letter, and numerous disciplinary actions and restrictions within the span of three years sufficient to establish recklessness or incompetence); *Pesina v. Hudson*, 132 S.W.3d 133, 139 (2004) (three intoxicated driving incidents, two collisions, and one speeding ticket in two-year period

preceding accident sufficient to raise a fact issue as to driver's recklessness or incompetence). In light of the foregoing, the Court concludes that under Texas law, Harris's two speeding convictions—one in May 2007 and the other in June 2009 (six and four years prior to the Phillips-Harris accident, respectively)—are too remote and few to establish recklessness or incompetence.

### E.  Gross Negligence

In her complaint, Plaintiff asserts a claim of gross negligence against both Super Service and Harris. (Doc. 3 at ¶¶ 18–19.) Plaintiff brings this claim in the context of her claim for exemplary damages. (*See id.* at ¶ 20.) A plaintiff may recover exemplary damages only if he or she "proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." Tex. Civ. Prac. & Rem. Code § 41.003(a). "Clear and convincing" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 41.001(2). For the purposes of a claim for exemplary damages, "gross negligence" means an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." *Id.* § 41.001.

Gross negligence consists of both objective and subjective elements. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). Thus, to meet her burden, Phillips must prove by clear and convincing evidence that 1) when viewed objectively from Defendants' standpoint at

the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and 2) Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *Id.* (citations omitted). Under the objective component, "extreme risk" is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury. *Id.* at 137–38 (citations omitted).

The subjective prong, in turn, requires that the defendant knew about the risk, but that the defendant's acts or omissions demonstrated indifference to the consequences of its acts. *Id.* (citations omitted). An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994). Only if the defendant's act or omission is unjustifiable and likely to cause serious harm can it be grossly negligent. *Id.* Thus, a party cannot be liable when it actually and subjectively believes that circumstances pose no risk to the injured party, even if they are wrong. *U-Haul*, 380 S.W.3d at 141 (citation omitted); *Perez Librado v. M.S. Carriers, Inc.*, 452 S.W.3d 847, 854 (N.D. Tex. June 30, 2004). A defendant's subjective mental state can be proven by direct or circumstantial evidence. *Id.* at 23.

Although the courts recognize that there is "no exact line" that can be drawn between ordinary and gross negligence, in general, the situation must be "highly dangerous." *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993) (internal citation and quotation marks omitted). *See also Terminix, Inc. v. Right Away Foods Corp., Inc.*, 771 S.W.2d 675, 681 (Tex. App.—Corpus Christi 1989, writ denied) (use of twice the normal quantity of fumigation chemicals and failure to properly to instruct client on safety precautions insufficient to show gross negligence); *Port Terminal R.R. Ass'n v. Richardson*, 808 S.W.2d 501, 513 (Tex. App.—

Houston [14th Dist.] 1991, writ denied) (inadequate flagging of railroad crossing insufficient to show gross negligence); *Hylander v. Groendyke Transp., Inc.*, 732 S.W.2d 692, 695 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.) (no evidence of gross negligence where truck driver, after suffering a tire blowout at night, reduced his speed to 30 m.p.h. and continued driving in the right-hand lane). Consequently, evidence of simple negligence is insufficient to prove either the objective or subjective elements of gross negligence. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998) (citations omitted).

### 1.  Harris

In her complaint, Phillips asserts that Harris was grossly negligent in one of the following manners: (1) failure to control speed; (2) failure to operate the vehicle in a non-negligent manner; (3) failure to take evasive action or to avoid the collision in question; (4) failure to maintain such a lookout as a person of ordinary prudence would have maintained under the same or similar circumstances; (5) failure to apply the brakes to the vehicle in a timely manner to avoid the collision in question; and (6) failure to maintain the vehicle in proper working condition. (Doc. 3 at ¶ 19.) This claim tracks the language from the ordinary negligence claim Phillips asserts against Harris nearly word for word. (*Compare id.* with *id.* at ¶ 12.) The only difference is that, in her gross negligence claim, Phillips asserts that these acts were done with "malice and/or conscious disregard for human safety" and with "willful, wanton[,] and actual conscious indifference to the rights, safety[,] and welfare of Plaintiff." (*Id.* at ¶ 18.)

In their motion for summary judgment, Defendants contend that because Harris had no history of drug or alcohol abuse that would have made an injury accident likely and there is no evidence that she was impaired on the day of the accident, she is entitled to summary judgment on Phillips's gross negligence claim. (Doc. 21 at ¶¶ 16, 18.) Phillips responds that Defendants

have failed to meet their initial burden and there is evidence creating a genuine issue of material fact regarding the question of Harris's gross negligence. (Doc. 23 at 5.) With regard to the objective element of a gross negligence claim, Phillips argues that failure to control the speed of an 18-wheeler, or operating one in a negligent manner, involves an extreme degree of risk. (*Id.* at 6.) Because Harris has driven large commercial vehicles before, Phillips reasons that she would "undoubtedly be aware of the potential harm that could be caused by their negligent operation." (*Id.*) According to Phillips, this fact, combined with Phillips's testimony that she saw an 18-wheeler "coming up fast" and was then struck from behind, is sufficient to satisfy the subjective element of her gross negligence claim. (*Id.* at 6–7.) Defendants disagree, arguing that, if anything, the allegations against Harris only support a finding of ordinary negligence. (Doc. 25 at ¶ 2.) Defendants further argue that there is no evidence that Harris acted with conscious indifference to the rights, safety, or welfare of others. (*Id.* at ¶ 3.)

First, the Court notes that there is no support for Phillips's assertion that the negligent operation of an 18-wheeler constitutes gross negligence. In fact, Texas courts have repeatedly made clear that whether a driver is operating a car or truck, acts that support a finding of ordinary negligence, such as a party's failure to obey traffic laws, will not support a finding of gross negligence. *McCarty v. Moss*, 225 S.W.2d 883, 886 (Tex. Civ. App.—Austin 1949, writ ref'd) (mere fact that an automobile was operated at an excessive rate of speed does not constitute gross negligence); *Rogers v. Blake*, 240 S.W.2d 1001, 1004 (1951) (conscious failure to stop at a stop sign, standing alone, does not constitute gross negligence); *Hylander v. Groendyke Transp., Inc.*, 732 S.W.2d 692, 695 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.) (truck driver's decision to continue driving with a blown-out tire at night insufficient to constitute gross negligence). Indeed, a driver's actions must be considerably more extreme, often

involving multiple conscious acts or omissions, to support liability. *See, e.g.*, *Perez Librado*, 2004 WL 1490304, at *3 (denying motion for summary judgment on gross negligence claim because truck driver drove 56–58 miles per hour in an area with controlled intersections, intentionally failed to observe the roadway for 14–20 seconds, and ran a stop sign as a result).

"Here, no evidence exists that an act or omission by [Harris], viewed objectively from her standpoint, involved an extreme degree of risk that [she] was actually, subjectively aware of, but nonetheless disregarded to proceed in conscious indifference to the safety of others." *TXI Transp. Co.*, 224 S.W.3d at 919. There is no evidence that Harris recognized an extreme risk but simply did not care. She was not under the influence of drugs or alcohol, nor did she disregard any traffic laws, both of which would be insufficient to establish gross negligence standing alone anyway. In fact, the record indicates that a third-party started the chain reaction leading to the collision between Harris and Phillips. Accordingly, Harris is entitled to summary judgment on Phillips's gross negligence claim.

### 2. Super Service

Phillips's asserts the same theory of gross negligence against Super Service as it does against Harris. (Doc. 3 at ¶ 19.) As a result, the Court is not convinced that Phillips has properly asserted a claim for gross negligence against Super Service pursuant to her negligent hiring, retention, or entrustment claims.[11] Nevertheless, in an abundance of caution, the Court will fully analyze the gross negligence claim against Super Service under these doctrines.

---

[11] Specifically, Phillips's complaint fails to allege that Super Service was grossly negligent in hiring and retaining Harris or entrusting a vehicle to her. Although it states that "Defendants were gross[ly] negligent in one or more of the following manners," it lists only six theories of negligence, all of which are based entirely on Harris's actions. *See Reed v. Vance*, 02-15-00122-CV, 2015 WL 5770621, at *5 (Tex. App.—Fort Worth Oct. 1, 2015, no pet.) (finding that plaintiff failed to allege a valid cause of action for gross negligence because "the mere fact that an employee of a corporation committed negligence or gross negligence, without more, is simply not a basis under the law for holding a corporation liable for gross negligence.").

A corporation may not be held liable for punitive damages for gross negligence unless the corporation itself (1) commits gross negligence, (2) authorized or ratified an agent's gross negligence, (3) was grossly negligent in hiring an unfit agent, or (4) committed gross negligence through the actions or inactions of a vice-principal. *R & R Contractors v. Torres*, 88 S.W.3d 685, 708 (Tex. App.—Corpus Christi 2002, no pet.); *Ellender*, 968 S.W.2d at 921–22 (citations omitted). Phillips's theory of corporate liability in this case is unclear, but it appears to rest on theories one, two, or three, since nowhere does she allege that Harris was a vice-principal for Super Service. As a result, the Court will only address the first three theories of liability.

First, because the Court already concluded that Harris was not grossly negligent, Super Service cannot have authorized or ratified grossly negligent conduct by Harris to be liable under the second theory. Second, because the Court finds that summary judgment is proper as to Phillips's claims for negligent hiring, retention, and entrustment against Super Service, her gross negligence claims against Super Service on these grounds likewise fail. *McDorman*, 288 F. Supp. 2d at 809–10. Finally, even had these claims survived, the Court finds that there is no evidence that Super Service was grossly negligent in hiring, retaining, or entrusting a vehicle to Harris.

Super Service asserts that because it conducted a thorough background check of Harris's driving qualifications and history, "[t]here was not a likelihood of injury present to others by entrusting a commercial vehicle to Harris." (Doc. 21 at ¶¶ 16, 18.) Super Service further avers that it cannot be liable because Harris had no history of drug or alcohol abuse that would have made injury likely and there is no evidence that she was impaired on the day of the accident. (*Id.*) Accordingly, the company concludes it is entitled to summary judgment on Phillips's gross negligence claim. (*Id.*)

24 / 28

Phillips responds that "[v]iewed objectively, hiring unqualified commercial vehicle drivers involves an extreme degree of risk considering the probability and magnitude of potential harm that negligently operated eighteen-wheelers might cause." (Doc. 23 at 7.) Phillips cites no case law for this proposition. She also contends that the background checks were not as thorough as Super Service claims and the fact that the company exercised "some care" in conducting those checks does not insulate it from liability for gross negligence. (*Id.* at 7–8.) With regard to the subjective element of a gross negligence claim, Phillips argues that the "obvious red flag on the face of the application and background check, that Harris held employment as a commercial truck driver for over a year without a commercial driver's license," as well as the fact that the company "only investigated Harris's driving record in a state in which she did not reside," is circumstantial evidence that the company acted in "conscious indifference to the extreme risk of harm presented by reckless or incompetent drivers of commercial vehicles like Harris." (*Id.* at 9.) In its reply, Super Service points out that the standard of care is not higher for 18-wheeler drivers. (Doc. 25 at ¶ 1.) It also argues that its pre-employment checks were not grossly negligent because (1) it did in fact run a check in Mississippi; (2) the record demonstrates that the CDL Harris had was a duplicate license; and (3) the citations that did appear on the Mississippi record are not relevant to the issue of Harris's driving competence. (*Id.* at ¶¶ 5–12.)

The Court begins by noting that there is no support for Phillips's argument that companies who hire drivers for 18-wheelers are held to a different gross negligence standard than other drivers, or that hiring unqualified drivers for such vehicles, without more, is grossly negligent as a matter of law. In fact, the "Texas cases that have imposed punitive damages . . . have required more than a finding that the driver was unlicensed or inexperienced." *See, e.g.,* *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 573 (Tex. 1985) (company who hired

unlicensed truck driver with clear record and experience not grossly negligent). *See also TXI Transp. Co.*, 224 S.W.3d at 919–20 (company who hired driver not in compliance with licensing requirements and with less experience than he represented on application not grossly negligent). "Those cases have required evidence that the driver was in fact incompetent or habitually reckless, and the owner knew or should have known that the driver was incompetent or reckless." *Id.* (collecting cases).

Moreover, in order for a company to be liable for punitive damages, the courts require more evidence than that the employer failed to inquire into or check the driver's driving record. *McDorman*, 288 F. Supp. 2d at 809–10. The employer must be aware of the peril caused by its employee, but demonstrate by his acts or omissions that it does not care. *Id.* at 810. Thus, even when a driving check is conducted, those that come back clear or turn up convictions that do not speak to the driver's driving abilities are insufficient to raise an issue on gross negligence. *Id.* Indeed, the courts that find sufficient evidence of gross negligence are faced with egregious driving records of which the employer was aware and took no action to address. *Perez Librado*, 2004 WL 1490304, at *4 (fact issue as to company's gross negligence because evidence existed showing that company was aware that its driver had committed more than 320 driver-log violations); *Dalworth Trucking Co. v. Bulen*, 924 S.W.2d 728, 732 (Tex. App.—Texarkana 1996, no writ) (upholding affirmative jury finding on gross negligence because evidence showed that company was aware its driver had a long history of safety violations); *Montemayor v. Heartland Transp., Inc.*, No. B-07-CV-151, 2008 WL 4777004, at *6 (S.D. Tex. 2008) (denying defendant trucking company's motion for summary judgment because the plaintiff offered evidence that the driver "not only had a 'negative driving history,' but that Heartland knew of this history, decided to fire him as a result of it, but nonetheless retained him for one more

assignment."); *Ryan Srvs., Inc. v. Bobbins*, 13-99-299-CV, 2001 WL 1002189, at *1, 5–6 (Tex. App.—Corpus Christi June 7, 2001, pet. denied) (upholding jury's award of punitive damages because company (1) was aware that driver had lied about his traffic record on his application and, in fact, had received a DWI, several other tickets, and been involved in an alcohol-related accident within the past five years, but hired him anyway; (2) knew that his driver's license had been suspended and he had received another speeding ticket during his employment yet continued to allow him to drive; (4) failed to report the violations that occurred during his employment; and (5) certified that he was a safe driver.)

In this case, the record demonstrates that Super Service conducted a number of background and driving checks on Harris, all of which came back clear. There is no evidence demonstrating that the company was aware of any issues with Harris's driving abilities, and even if it had known of her earlier tickets, as already discussed in the Court's analysis of Phillips's negligent hiring, retention, and entrustment claims, those convictions either do not bear on or were too remote to create a fact issue regarding her driving abilities. Furthermore, Harris was licensed, was not an inexperienced driver, had no record of safety violations during her time with Super Service, and there are no facts in the accident report indicating she was at fault in the collision. Under these facts, the Court concludes Super Service is likewise entitled to summary judgment on Phillips's gross negligence claim.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion for Partial Summary Judgment on Plaintiff's Negligent Hiring, Negligent Retention, and Negligent Entrustment Claims (Doc. 20) and Defendants' Motion for Partial Summary Judgment on Plaintiff's Gross Negligence Claims

(Doc. 21) are **GRANTED**.


SIGNED at Houston, Texas, this 26th day of May, 2016.


MELINDA HARMON
UNITED STATES DISTRICT JUDGE